FILED
2014 Feb-20  AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHELIA D. LANIER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | Case No. 2:12-CV-03820-WMA |
| | } | |
| THE BOARD OF TRUSTEES OF THE | } | |
| UNIVERSITY OF ALABAMA, | } | |
| | } | |
| Defendant. | } | |
| | } | |

**MEMORANDUM OPINION**

Plaintiff, Shelia D. Lanier ("Lanier"), instituted the present action alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"), and alleging race-based harassment in violation of § 1981. Defendant, the Board of Trustees of the University of Alabama, moves for summary judgment. For the reasons detailed below, summary judgment will be granted.

**BACKGROUND**

Although the parties dispute certain facts relating to Lanier's employment, they do not dispute the facts that are material to deciding the viability of Lanier's complaint. Pursuant to Rule 56, Fed. R. Civ. P., the court views all admissible evidence in the light most favorable to Lanier and draws all reasonable inferences in her favor.

1

Defendant first hired Lanier in May 1990.  Lanier is black. Theresa T. Phillips ("Phillips") became Lanier's supervisor in November 2009.  Phillips is white.  When Phillips became Lanier's supervisor, Lanier was working in defendant's Bad Debt department. Phillips assigned Lanier to cross-train in the Customer Service department beginning in May 2010 and eventually transferred Lanier to Customer Service in the summer of 2011.  Phillips's manager, Stacey Hansen ("Hansen"), white, also took part in the decision to transfer Lanier to Customer Service.  Lanier's positions in both Bad Debt and Customer Service have the same pay grade and benefits.

## A.    Transfer to Customer Service and Later Attempted Transfers

When Phillips transferred Lanier to Customer Service, Lanier verbally asked Phillips to move her back to Bad Debt and claimed that Phillips "was setting [her] up to fail because of the fact that [Phillips] moved Joyce Herndon so that she would not get bad evaluations." Def. Mot. Summ. J. Ex. A ("Pl. Depo.") at 79-80. Herndon is white.  Lanier alleges that Phillips re-transferred Herndon from Customer Service to Bad Debt because Herndon did not want Customer Service duties that required her to answer the telephone and be subject to tougher evaluations.  However, Lanier's testimony purporting to state Herndon's reasons for requesting the transfer and Phillip's reasons for granting it is inadmissible hearsay, as will be discussed in detail below.

After being transferred to Customer Service, Lanier repeatedly

asked Phillips to transfer her back to Bad Debt or to any open position without phone duties.  Phillips claims that one reason she did not transfer Lanier back into Bad Debt was that the two employees then working in Bad Debt were "outperforming" what Lanier had accomplished in that position. Def. Mot. Summ. J. Ex. B at 51-52.  Phillips also states, without contradiction, that defendant has a policy prohibiting the transfer of employees "having quality or productivity issues." *Id.* at 51.

Failing to get a transfer, Lanier submitted a grievance letter on November 8, 2011, to Audra McClinton ("McClinton"), a white Human Resources Consultant employed by defendant.  The grievance letter itself would, of course, be the best evidence of what it contained.  The only evidence offered as to what this letter contained comes from Lanier's deposition. *See infra* Discussion Section A.  Per Lanier's testimony, her letter complained that she "was placed in a position and [she] was not being allowed to move." Pl. Depo. 15.  Lanier also says that the grievance disputed her negative evaluations and the need for cross-training.  Lanier's oral recollection of what she wrote in this grievance letter does not contain the slightest reference to race, either her race or Herndon's race.

Lanier submitted a second grievance letter on November 21, 2011, to the Human Resources department.  She relies upon this November 21 grievance, as well as the November 8 grievance, to

oppose defendant's motion for summary judgment. Def. Mot. Summ. J. Ex. 5.  The grievance describes several disputes between Phillips and Lanier and alleges that Phillips treated Lanier unfairly and in retaliation for her earlier grievance.  Lanier admits, however, that Phillips was not aware that Lanier had submitted any grievances until after Lanier was discharged.  Again, the grievance of November 21, although passing muster as the best and only evidence of what it contains, makes no complaint of race discrimination.

## B.  Disciplinary Actions

Lanier had five disciplinary actions for performance shortcomings in the year preceding her discharge that occurred on April 20, 2012.  She received the first written warning on April 21, 2011, for below-standard productivity;[1] a second written warning on June 1, 2011, for below-standard quality reviews; a third written warning on December 15, 2011, for below-standard quality reviews; a fourth written warning on February 10, 2012, for below-standard quality reviews; and a fifth written evaluation on the date of her discharge, April 20, 2012, for below-standard quality reviews and the inappropriate transfer of a call on April 4, 2012, which prompted a patient complaint and resulted in

_____

[1] The April 21, 2011, written warning was related to customer calls but occurred before Lanier transferred to Customer Service in summer 2011.  Based on information in Lanier's deposition, she probably received this warning while cross-training in Customer Service, which she began doing in May 2010.

Lanier's discharge.

Lanier contests all of these disciplinary actions. She claims that all of these actions were unfair because she received insufficient training; because she was not allowed as much time to research and follow up on accounts as other employees in Customer Service; because she had phone and computer problems; because she was assigned more duties than other employees in Customer Service; because Phillips had a bias against her when applying the evaluation criteria to Lanier's calls; because she transferred the call on April 4, 2012, according to common employee practice; and because another employee's actions prompted the patient complaint resulting from the April 4, 2012, transferred call.

In connection with the written warnings, Phillips placed Lanier on a performance improvements plan ("PIP") on December 15, 2011, and a second PIP on February 10, 2012. Lanier claims that she did not receive the additional training that Phillips was supposed to provide as part of the December PIP.

## C.   Discharge

Defendant discharged Lanier on April 20, 2012. Three employees participated in the termination decision: Phillips; McClinton from Human Resources; and Hansen, Phillips's manager. At meetings on the subject of Lanier's possible discharge, these three decision-makers discussed the possibility of transferring Lanier to a different department, but the manager of that department declined

to accept Lanier.  The decision-makers did not discuss Lanier's grievance letters at the meetings because the parties, **including Lanier**, agree that Phillips was unaware of Lanier's grievance letters until after Lanier's discharge.  McClinton was aware of the grievance letters given that Lanier submitted her November 8 letter to McClinton.  The evidence also suggests that Hansen was aware of Lanier's November 8 letter.[2]

Phillips, McClinton, and Hansen informed Lanier of their decision to discharge her on April 20, 2012, effective immediately. The discharge letter notes defendant's policy that employees may be discharged if they receive three written warnings in an 18-month period.  The discharge letter attributes Lanier's discharge to her receiving five total written warnings (four previous warnings and one warning on the same date) and her consistent failure to meet standards for handling customer calls.  Lanier was replaced with a black employee.

Lanier presented charges to the Equal Employment Opportunity Commission ("EEOC") on May 3, 2012, alleging race discrimination and retaliation based on her performance evaluations and her discharge. Doc. 1 at 15.  The EEOC charges were submitted within 180 days of Lanier's grievance letters and her discharge.  The EEOC

---

[2] In her deposition, Lanier asserts that Hansen mentioned in a staff meeting on November 15, 2011, that someone had filed a grievance.  Lanier's testimony is circumstantial evidence that Hansen knew about Lanier's November 8 letter and would be admissible as an opposing party's statement. *See* Fed. R. Evid. 801(d)(2)(D).

issued its right to sue letter on August 7, 2012, and Lanier filed
her complaint on November 6, 2012. Doc. 1 at 16.

## DISCUSSION

Summary judgment has the same standard in employment
discrimination cases as in other cases; "[n]o thumb is to be placed
on either side of the scale." *Chapman v. AI Transport*, 229 F.3d
1012, 1026 (11th Cir. 2000) (en banc).  To grant summary judgment,
a court must determine that no genuine dispute of material fact
exists and that the movant is entitled to judgment as a matter of
law. Fed. R. Civ. P. 56.  For the purposes of summary judgment, the
court views all admissible evidence in the light most favorable to
the nonmoving party and draws all reasonable inferences in that
party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting
*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Lanier alleges that she suffered race discrimination,
retaliation, and race-based harassment in violation of § 1981, but
she does not invoke 42 U.S.C. § 1983.  Plaintiff conceded at the
hearing held on February 3, 2014, on defendant's Rule 56 motion
that this deficiency entitles defendant to summary judgment on the
counts alleging violations of § 1981. *See Butts v. Cnty. of
Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000).

Lanier's Title VII claims require a more in-depth examination.
They ultimately fail to satisfy the summary judgment standard.
Title VII claims based on circumstantial evidence, as in this case,

are analyzed using the three-step framework from *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013). Lanier must first make out a prima face case, the elements of which vary depending on the particular Title VII violation alleged, and thereby raise a presumption of discrimination. *Id.* Defendant must then provide a legitimate, non-discriminatory reason for the adverse employment action, which, if successfully shown, rebuts the presumption of discrimination. *Id.* Lastly, Lanier must show that defendant's facially adequate reason is a pretext and was not the real reason for the adverse action. *Id.*

The below sections apply this framework to Lanier's Title VII claims of retaliation and race discrimination. Section (A) evaluates the admissibility of Lanier's evidence on two key issues. Section (B) examines Lanier's prima facie case for (1) retaliation and (2) race discrimination. Because the court finds that Lanier fails to make a prima facie case for any of her claims, it need not discuss defendant's evidence of legitimate non-discriminatory reasons for the adverse actions or Lanier's evidence of pretext.

## A.    Admissibility of Evidence

The admissibility of evidence on two particular issues has a devastatingly dispositive impact on the viability of Lanier's Title VII claims. "[E]vidence inadmissible at trial cannot be used to avoid summary judgment" and, "[e]ven on summary judgment, a court

8

is not obligated to take as true testimony that is not based upon personal knowledge." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (citations and internal quotation marks omitted). Accordingly, this section addresses that evidence separate from the evaluation of whether Lanier has a prima face case.

The evidence respecting Lanier's grievance of November 8, 2011, directly affects her retaliation claim. As discussed below, for a prima facie case of Title VII retaliation, the employee must have engaged in statutorily protected activity. 42 U.S.C. § 2000e-3(a) (1982) (protecting employees from retaliation **if** they protested discrimination made unlawful by the statute). In the present case, Lanier must have specifically protested race discrimination, not unfair treatment generally. Lanier contends that one way she complained of race discrimination can be discerned from her November 8 grievance. Her oral testimony of what was contained in that grievance clearly violates the best evidence rule, and is inadmissible hearsay. There is no showing of why the grievance letter itself has not been produced for the record. Furthermore, the mere fact that an employee who complained of workplace mistreatment is in a class protected by Title VII does not translate into evidence that the alleged mistreatment was motivated by the employee's protected status. An employer is not required to read the employee's mind. A complaint is just a complaint until it contains a reference to conduct proscribed by

Title VII.

Lanier alleged for the first time in a supplementary brief filed on February 6, 2014, that her November 8 grievance included the word "race" and that it "made specific reference to white comparators." Doc. 21, ¶ 3. On February 6, 2014, the record was closed. The brief does not have an affidavit appended, and Lanier has never made such statements under oath in testimony submitted in opposition to defendant's motion. The brief's belated allegations about the content of Lanier's November 8 grievance are inadmissible and cannot be considered.

The evidence relating to Herndon's reason for requesting a transfer and Phillips's reasons for allowing it affect Lanier's Title VII discrimination claim. Lanier's sole evidence bearing on the reason for Herndon's transfer is Lanier's oral testimony of what Herndon told her — classic hearsay.[3] Lanier does not say that she learned this information in a way that might implicate Fed. R. Evid. 801(d)(2) (opposing party's statement), 803(1) (present sense impression), 803(2) (excited utterance), or 807 (residual exception); or that these reasons appear on personnel records, implicating Fed. R. Evid. 803(6) (business records exception). In the absence of a hearsay exclusion or exception, the court, at the hearing held on February 3, 2014, expressed serious doubt about the

---

[3] The court accepts Lanier's testimony as admissible evidence on the fact of Herndon's transfer. Lanier had personal knowledge through observation that Herndon transferred, and this knowledge involves no hearsay.

10

admissibility of Lanier's testimony.  Lanier has offered no equally serious argument to support the admissibility of Lanier's recollection of the reasons for Herndon's transfer.  Lanier's testimony on the subject is inadmissible and cannot be considered on summary judgment.

**B.   Prima Facie Case**

Pursuant to Title VII, Lanier claims that defendant (1) retaliated against her for her grievances complaining of race discrimination and (2) discriminated against her based on her race. Each of these Title VII claims has distinct elements that Lanier must satisfy to make out a prima face case.

**1.   Title VII Retaliation**

To make a prima facie case for Title VII retaliation, Lanier must show (i) that she engaged in statutorily protected activity; (ii) that she suffered adverse employment action; and (iii) that a causal relationship exists between the events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (citations omitted).  A causal relationship can be established through evidence that the employer's "desire to retaliate" against the protected expression was the "but-for cause" of the adverse action. *Univ. of Texas Southwestern Medical Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

Lanier has established the second element of adverse employment action.  She suffered adverse action when she was

discharged. *See Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1185 (11th Cir. 1984).

However, Lanier has failed to establish the first element, namely, that she engaged in statutorily protected activity. She has presented no admissible evidence that she made protected complaints prior to her discharge. *See* 42 U.S.C. § 2000e-3(a) (1982). Lanier has not submitted any admissible evidence that she verbally complained of race discrimination. *See Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (protection extends to employees' "informally voice[d] complaints to their superiors"). Lanier states that she complained multiple times that she was being "set up to fail" to Phillips, *e.g.*, Pl. Depo. 80, 119, but such a non-specific complaint does not imply race as the reason. Lanier once verbally complained that she was being set up to fail, somehow in favor of Herndon, but the mere fact that Herndon is white does transmogrify any reference to Herndon into a complaint of racially disparate treatment. Without evidence that Lanier verbally complained of race discrimination——with explicit allusion to race——she has not established that her verbal complaints were protected activities.

Turning to Lanier's grievance letters, which are the primary evidence for her retaliation claim, Lanier has not presented admissible evidence that either of the written grievances complained of race discrimination. Lanier's November 21 grievance

neither alleged race discrimination nor alluded to race in any way. Def. Mot. Summ. J. Ex. 5.   Although Lanier maintains that it contains "expression[s]" of retaliation and race discrimination, the plain text does not connect the actions complained of to her race. *See* Pl. Depo. 54.   Her recollection of what her November 8 grievance contained not only violates the best evidence rule, but Lanier has not offered any **admissible** evidence whatsoever that she ever complained about race discrimination. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007); *see supra* Discussion Section A.   Thus, Lanier has not established that her grievances were protected activities.

Even if Lanier's grievances could be stretched and deemed to hint at race discrimination so as to qualify them as protected expressions, Lanier has failed to establish the third element, a causal connection between her grievances and her discharge. Lanier's discharge took place five months after she submitted her last grievance on November 21, 2011.   "[I]n the absence of any other evidence of causation," even a three-month period between the protected activity and the adverse action "is insufficient to create a jury issue on causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).   The five-month period between Lanier's last grievance and her discharge creates a stumbling block on the causation element that is insurmountable without more evidence than Lanier has offered. *See id.*   Indeed, by admitting that Phillips did

13

not know about her grievances until after the discharge, Lanier has admitted that the three decision-makers, which included Phillips, did not even discuss her grievances when deciding to discharge her. The mere fact that McClinton and Hansen knew about the grievances does not establish causation for Lanier's discharge. Lanier's verbal complaints about being set up to fail, if they qualified as protected activities, occurred before she submitted her written grievances and would have even more tenuous connections to her discharge than her written grievances would have.

Given that Lanier has failed to establish that she engaged in protected activity, defendant is entitled to summary judgment on Lanier's retaliation claims. Lanier has also failed to demonstrate that her written grievances were the but-for cause of her discharge.

### 2.    Title VII Race Discrimination

To make a prima facie case for Title VII race discrimination, Lanier must show (i) that she is a member of a protected class; (ii) that she suffered adverse employment action; (iii) that the employer "treated similarly situated employees outside [her] classification more favorably;" and (iv) that she was qualified for the position. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). Defendant does not dispute that Lanier is a member of a protected class or that she was qualified for the Bad Debt position and the Customer Service position. The elements at issue are

whether Lanier suffered adverse employment action and whether she
was subjected to disparate treatment.

Adverse Employment Action

Lanier alleges that she suffered race discrimination with
respect to the following adverse actions: (a) defendant's failure
to promote her, (b) the disciplinary actions, (c) the discharge,
and (d) the failure to transfer her out of Customer Service.[4]  To
qualify as an adverse action, the employer's conduct "must impact
the terms, conditions, or privileges of the plaintiff's job in a
real and demonstrable way," which may, but need not, have "direct
economic consequences." *Davis v. Town of Lake Park, Fla.*, 245 F.3d
1232, 1239-40 (11th Cir. 2001).  As discussed below, (a)
defendant's failure to promote Lanier and (b) the disciplinary
actions do not qualify as adverse actions, but (c) the discharge
and (d) the failure to transfer her do qualify as adverse actions.

(a) Defendant's failure to promote Lanier does not satisfy the
standard for an adverse action.  To make a prima face case for

_____

[4] The complaint separately alleges race discrimination (promotion) and
(termination) in addition to general race discrimination.  The bases for each
count must fall within "'the scope of the EEOC investigation that could
reasonably be expected to grow out of the initial charges of discrimination.'"
*Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (citation
omitted).  The EEOC charges note Lanier's discharge, defendant's criticism of
her job performance, and that she protested discriminatory practices.  If
Lanier protested discrimination in her grievances, actions described in the
grievances can also be grounds for her claims.  Her November 21 grievance
complained about defendant's failure to transfer her, so Lanier can use that
to allege discrimination.  However, Lanier cannot use her transfer into
Customer Service because she did not mention it in her November 21 grievance,
did not mention it in her November 8 grievance (at least according to
admissible evidence), and did not file the EEOC charges within 180 days of her
transfer. *See* 42 U.S.C. § 2000e-5(e)(1).

discrimination based on a failure to promote, Lanier must show that she "applied for and was qualified for a promotion." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013) (quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010)). Lanier admits that she did not apply for any promotions, Pl. Depo. 15., so she cannot show adverse action for defendant's failure to promote her.

(b) To the extent that Lanier alleges race discrimination based on her low performance reviews and written warnings, **separate from discharg**e, these actions do not qualify as adverse. A low score on a "performance evaluation, by itself, is not actionable under Title VII unless [the employee] can establish that the lower score led to a more tangible form of adverse action." *Brown v. Snow*, 440 F.3d 1259, 1265–66 (11th Cir. 2006); *see Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240 (11th Cir. 2001). Although Lanier argues that her discharge was an adverse action, her performance reviews and written warnings are not.

(c) Lanier's discharge did, of course, constitute an adverse action. Discharging an employee unquestionably qualifies as adverse action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). (d) Defendant's failure to transfer Lanier out of Customer Service arguably constituted an adverse action. Failure to transfer an employee can qualify as an adverse action. *See Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013,

16

1028-29 (11th Cir. 2008) (adverse action when an employee was not transferred after applying for an open position for which she was qualified).  Whether a particular failure to transfer qualifies as an adverse action depends on the context and whether a reasonable person in the employee's situation would consider the action adverse. *Taylor v. Roche*, 196 F. App'x 799, 803 (11th Cir. 2006) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In *Taylor v. Roche*, the Eleventh Circuit concluded that failure to transfer was an adverse action where the employee had requested the transfer for over a year; the employee had a tense relationship with a supervisor; and the employee sought to return to his previously held position for family reasons and out of a desire to avoid the tense situation with his supervisor. *Id.*  In the present case, interpreting the facts favorably to Lanier, she repeatedly requested a transfer out of Customer Service starting the summer of 2011; she had a tense relationship with Phillips; and she sought to transfer either to her previously held Bad Debt position or to any open position to avoid both the tense situation with Phillips and the Customer Service phone duties.  In context, a reasonable person could consider Phillips' failure to transfer Lanier as an adverse action.

In sum, the adverse action element of Lanier's prima facie case of race discrimination has been satisfied by Lanier's discharge and defendant's failure to transfer her.  Unfortunately,

17

these favorable possibilities cannot overcome the undisputed dispositive facts with respect to the other prima facie elements that Lanier has not met.

Disparate Treatment

The second element for Lanier's prima facie case of race discrimination consists of the necessary showing that defendant "treated similarly situated employees outside [plaintiff's] classification more favorably." See Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). This element is considered separately in relation to defendant's two adverse actions. The court finds that Lanier fails to establish disparate treatment either for the discharge or for the failure to transfer her.

Lanier may establish disparate treatment for her discharge by evidence that she was "either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984). In the present case, the undisputed facts show that Lanier was replaced with someone of her same race. Def. Mot. Summ. J. Ex. C at ¶ 3. Lanier must show, then, that "a similarly situated employee" outside her protected class "engaged in nearly identical conduct and was not discharged." See Nix, 738 F.2d at 1185. The comparator employee must have been "involved in or accused of the

18

same or similar conduct and [was] disciplined in different ways." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). "'[T]he quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Lanier fails to establish disparate treatment because she does not provide an appropriate comparator. Lanier does not demonstrate that a white employee with the same or similar pattern of low performance reviews, written warnings, and PIPs was not discharged. Lanier also does not show that a white employee engaged in the same or similar conduct without any disciplinary repercussions, *e.g.*, a written warning, with the exception of Fray. Fray is not an appropriate comparator because his performance, although arguably worse than Lanier's performance, was not "nearly identical" to Lanier's conduct with respect to the transferred phone call on April 4, 2012. *See id.* Fray failed to send documents to a patient and insisted that Lanier transfer a patient call contrary to official policy. An appropriate comparator would be (i) a white employee who, like Lanier, transferred a patient call contrary to official policy but was not disciplined after the supervisor learned of the call; and/or (ii) a white employee who had a similar number of disciplinary actions over a similar period of time but

19

was not discharged.  Lanier does not offer evidence of such a comparator in reference to her discharge.

For defendant's failure to transfer Lanier, she has not shown the disparate treatment element of her prima facie case.  Lanier must show that defendant "treated similarly situated employees outside [plaintiff's race] classification more favorably." *See Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).  The comparator must be "similarly situated in all relevant respects." *Id.* at 1562.[5]  For the failure to transfer, Herndon could be an appropriate comparator.  The facts show that defendant allowed Herndon, who is white, to transfer from Customer Service to Bad Debt.  However, there is no admissible evidence as to what reasons Herndon had for requesting the transfer or defendant's reasons for allowing it.  Although Lanier alleges that Herndon requested the transfer to avoid duties that required her to answer phones and be subject to tougher evaluations, these allegations are inadmissible hearsay. *See supra* Discussion Section A.  Thus, Lanier has not shown disparate treatment through an appropriate comparator for defendant's failure to transfer her.

Lanier has not shown a prima facie case of race discrimination based either on her discharge or on defendant's failure to transfer

---

[5] Because the comparator must be similarly situated in all relevant respects, Brooke Brock and Ms. Murphy do not qualify.  If, as Lanier claims, they were allowed to transfer because of tardiness and family issues, those reasons differ significantly from Lanier's dislike of Customer Service. *See* Pl. Depo. 64-65.

her out of Customer Service.  Accordingly, Lanier has not satisfied her initial burden, and the court need not examine defendant's reasons offered for either of its actions. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).  Defendant is entitled to summary judgment on Lanier's race discrimination claims.

## CONCLUSION

Interpreting the facts in the light most favorable to Lanier, she may have shown that she was treated unfairly.  However, "a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (citation omitted).  Although Lanier may have been treated unfairly, the evidence does not show that defendant's treatment was motivated by her race or in retaliation for any protests of race discrimination.  Accordingly, defendant is entitled to summary judgment on all counts.

DONE this 20th day of February, 2014.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

21